# CONSUMER PRODUCT SAFETY COMMISSION ET AL. *v.* GTE SYLVANIA, INC., ET AL.

No. 79–521.  Argued April 14, 1980—Decided June 9, 1980

REHNQUIST, J., delivered the opinion for a unanimous Court.

*Peter Buscemi* argued the cause *pro hac vice* for petitioners. With him on the briefs were *Solicitor General McCree, Assistant Attorney General Daniel, Deputy Solicitor General Geller, Leonard Schaitman, Mark N. Mutterperl,* and *Andrew S. Krulwich.*

*Bernard G. Segal* argued the cause for respondents. With him on the brief were *Charles C. Hileman III, Ira P. Tiger,*

*Deena Jo Schneider, Robert W. Steele, Alan M. Grimaldi, Harry L. Shniderman, H. James Conaway, Jr., Januar D. Bove, Jr., Stephen B. Clarkson, Charles S. Crompton, Jr., Ira M. Millstein, Peter Gartland, David Fleischer, Burton Y. Weitzenfeld, Michael A. Stiegel, William F. Patten,* and *H. Woodruff Turner.\**

Mr. Justice Rehnquist delivered the opinion of the Court.

The question presented is whether § 6 (b)(1) of the Consumer Product Safety Act, 15 U. S. C. § 2055 (b)(1), governs the disclosure of records by the Consumer Product Safety Commission pursuant to a request under the Freedom of Information Act. We granted certiorari to review a judgment of the Court of Appeals for the Third Circuit because of the importance of the question and because of a conflict in the Circuits.[1]  444 U. S. 979.

## I

In 1972, Congress enacted the Consumer Product Safety Act (CPSA), 86 Stat. 1207, 15 U. S. C. § 2051 *et seq.,* in order, *inter alia,* "to protect the public against unreasonable risks of injury associated with consumer products" and "to assist consumers in evaluating the comparative safety of consumer products." 15 U. S. C. §§ 2051 (b)(1) and (2). The CPSA created the Consumer Product Safety Commission (Commission) to carry out the statutory purposes. 15 U. S. C. § 2053. The Commission's powers include the authority to collect and disseminate product safety information, 15 U. S. C. § 2054 (a)(1), to conduct research and tests on consumer products, 15 U. S. C. §§ 2054 (b)(1) and (2), to promulgate safety standards, 15 U. S. C. § 2056, and to ban hazardous products, 15 U. S. C. § 2057.

---

*\*Richard A. Lowe* filed a brief for the Consumer Federation of America as *amicus curiae* urging reversal.

[1] The decision below, 598 F. 2d 790 (1979), is in direct conflict with *Pierce & Stevens Chemical Corp.* v. *U. S. Consumer Product Safety Comm'n,* 585 F. 2d 1382 (CA2 1978).

Section 6 of the CPSA, 86 Stat. 1212, 15 U. S. C. § 2055, regulates the "public disclosure" of information by the Commission. Section 6 (b)(1), with which we deal here, requires the Commission, at least 30 days before the public disclosure of information pertaining to a consumer product, to notify the manufacturer and to provide it with a summary of the information to be disclosed, if the product is to be designated or described in such a way as to permit the public to ascertain readily the manufacturer's identity. The manufacturer must be given a reasonable opportunity to submit comments regarding the information. And the Commission must take reasonable steps to assure that such information is accurate and that disclosure is "fair in the circumstances and reasonably related to effectuating the purposes" of the CPSA. If the Commission subsequently finds that it has made public disclosure of inaccurate or misleading information that adversely reflects on a manufacturer's products or practices, the Commission must "publish a retraction" in a manner "similar to that in which such disclosure was made. . . ." [2]

---

[2] In its entirety, § 6 states:

"(a)(1) Nothing contained in this Act shall be deemed to require the release of any information described by subsection (b) of section 552, title 5, United States Code, or which is otherwise protected by law from disclosure to the public.

"(2) All information reported to or otherwise obtained by the Commission or its representative under this Act which information contains or relates to a trade secret or other matter referred to in section 1905 of title 18, United States Code, shall be considered confidential and shall not be disclosed, except that such information may be disclosed to other officers or employees concerned with carrying out this Act or when relevant in any proceeding under this Act. Nothing in this Act shall authorize the withholding of information by the Commission or any officer or employee under its control from the duly authorized committees of the Congress.

"(b)(1) Except as provided by paragraph (2) of this subsection, not less than 30 days prior to its public disclosure of any information obtained under this Act, or to be disclosed to the public in connection therewith (unless the Commission finds out that the public health and safety requires a lesser period of notice), the Commission shall, to the extent practicable,

The relevant facts are set forth in a case decided by this Court earlier this Term, *GTE Sylvania, Inc.* v. *Consumers Union*, 445 U. S. 375 (1980), and need not be restated in detail. Briefly, the Commission obtained from respondents various accident reports, most of which were accompanied by claims of confidentiality. The Commission subsequently decided, after receiving Freedom of Information Act (FOIA) requests from the Consumers Union of the United States, Inc., and the Public Citizen's Health Research Group (the requesters), to release even those accident reports that were claimed to be confidential. Not surprisingly, lawsuits were soon filed in several Federal District Courts. See *GTE Sylvania, Inc.* v. *Consumers Union, supra*, at 378, n. 1.

---

notify, and provide a summary of the information to, each manufacturer or private labeler of any consumer product to which such information pertains, if the manner in which such consumer product is to be designated or described in such information will permit the public to ascertain readily the identity of such manufacturer or private labeler, and shall provide such manufacturer or private labeler with a reasonable opportunity to submit comments to the Commission in regard to such information. The Commission shall take reasonable steps to assure, prior to its public disclosure thereof, that information from which the identity of such manufacturer or private labeler may be readily ascertained is accurate, and that such disclosure is fair in the circumstances and reasonably related to effectuating the purposes of this Act. If the Commission finds that, in the administration of this Act, it has made public disclosure of inaccurate or misleading information which reflects adversely upon the safety of any consumer product, or the practices of any manufacturer, private labeler, distributor, or retailer of consumer products, it shall, in a manner similar to that in which such disclosure was made, publish a retraction of such inaccurate or misleading information.

"(2) Paragraph (1) (except for the last sentence thereof) shall not apply to the public disclosure of (A) information about any consumer product with respect to which product the Commission has filed an action under section 12 (relating to imminently hazardous products), or which the Commission has reasonable cause to believe is in violation of section 19 (relating to prohibited acts), or (B) information in the course of or concerning any administrative or judicial proceeding under this Act." 86 Stat. 1212, 15 U. S. C. § 2055.

The District Court for the District of Delaware ultimately granted respondents' motion for summary judgment and permanently enjoined the Commission from disclosing the submitted accident reports, as well as data compiled on a computer printout from those reports. 443 F. Supp. 1152 (1977).[3] The District Court rejected the Commission's contention that § 6 (b)(1) applies only when the Commission affirmatively undertakes to disclose information to the public, but not when it merely complies with a request for information under the FOIA. It held that § 6 (b)(1) is applicable to disclosures in response to FOIA requests and that it establishes particular criteria for withholding information, thereby falling within the scope of Exemption 3 of the FOIA, 5 U. S. C. § 552 (b)(3). It also found that the Commission failed to comply with § 6 (b)(1) procedures in this case. Thus, it concluded that the release of the accident reports would be contrary to the CPSA. 443 F. Supp., at 1162.

The Court of Appeals for the Third Circuit affirmed. 598 F. 2d 790 (1979). After thoroughly examining the language and legislative history of § 6 (b)(1), it concluded that "Congress did not intend that provision to apply only to Commission press releases, news conferences, publication of reports and other forms of 'affirmative disclosure' of information obtained under the Act." 598 F. 2d, at 811. Rather, "the information disclosure requirements of the CPSA were meant to protect manufacturers from the harmful effects of inaccurate or misleading public disclosure by the Commission, through any means, of material obtained pursuant to its broad information-gathering powers. The policies designed to be served by section 6 (b)(1) would be severely undermined, if not eviscerated, were the Commission's interpretation to prevail." Id., at 811–812.

---

[3] Earlier decisions of the District Court are reported at 438 F. Supp. 208 (1977) and 404 F. Supp. 352 (1975). These decisions are discussed in GTE Sylvania, Inc. v. Consumers Union, 445 U. S., at 377–378, and n. 1.

Petitioners repeat their contention here that § 6 (b)(1) was intended to provide safeguards for the release of information by the Commission only when the Commission makes public disclosures of information on its own initiative in carrying out its responsibilities under the CPSA. When information is released in this fashion, they argue, the Commission explicitly or implicitly represents that it believes the disclosed information to be true and that the public should rely on it. Brief for Petitioners 10. When the Commission merely releases information in response to an FOIA request, by contrast, they claim the Commission is obliged to release whatever materials it possesses and need not comply with § 6 (b)(1), because it has not made any express or implied statement regarding the documents released or the extent to which those documents reflect agency policy. Brief for Petitioners 11. Although there is some support for petitioners' interpretation of § 6 (b)(1) in legislative history contained in a Conference Report four years after the enactment of that section, see Part IV, *infra,* we agree with the Court of Appeals' determination that "legislative history" of this sort cannot be viewed as controlling.

## II

We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.

Section 6 (b)(1) by its terms applies to the "public disclosure of *any* information" obtained by the Commission pursuant to its authority under the CPSA, and to any information "to be disclosed to the public in connection therewith." (Emphasis added.) Nothing in the language of that section, or in any other provision of the CPSA, supports petitioners' claim that § 6 (b)(1) is limited to disclosures initiated by the Commission. And as a matter of common usage the term

"public" is properly understood as including persons who are FOIA requesters. A disclosure pursuant to the FOIA would thus seem to be most accurately characterized as a "public disclosure" within the plain meaning of § 6 (b)(1).[4]

Section 6 (b)(2) of the CPSA, 15 U. S. C. § 2055 (b)(2), contains specific exceptions to the requirements of § 6 (b)(1).[5] But the list of exceptions does not include the disclosure of information in response to an FOIA request. If Congress had intended to exclude FOIA disclosures from § 6 (b)(1) it could easily have done so explicitly in this section as it did with respect to the other listed exceptions. That Congress was aware of the relationship between § 6 and the FOIA when it enacted the CPSA is exhibited by the fact that Congress in § 6 (a)(1) specifically incorporated by reference the nine exemptions of the FOIA, 5 U. S. C. § 552 (b). We are consequently reluctant to conclude that Congress' failure to include FOIA requests within the exceptions to § 6 (b)(1) listed in § 6 (b)(2) was unintentional.

Finally, § 25 (c) of the CPSA, 15 U. S. C. § 2074 (c), further supports the conclusion that § 6 (b)(1) was not intended to distinguish between information disclosed to the public

---

[4] Petitioners argue that the exception to the 30-day notice requirement where "the Commission finds out that the public health and safety requires a lesser period of notice" suggests that the term "public disclosure" in § 6 (b)(1) should be read to encompass only affirmative disclosures by the Commission. The exception, they claim, makes little sense as applied to FOIA disclosures in that such disclosures are the result of the Commission's statutory obligation to comply with an FOIA request rather than a Commission-initiated decision to assist the public. The language of § 6 (b) (1), however, does not limit the scope of that section to disclosures of information intended "to assist the public." Rather, it refers broadly to any "public disclosure." And, as discussed in Part III, infra, the legislative history indicates that the concerns underlying § 6 (b)(1) were not limited to information affirmatively disclosed by the Commission.

[5] These exceptions, for example, include the disclosure of information concerning an imminently hazardous product and disclosures in the course of an administrative or judicial proceeding under the CPSA.

pursuant to FOIA requests and information disclosed at the initiative of the Commission.[6] Section 25 (c) designates accident and investigation reports that do not identify injured parties and their physicians, and reports on research and demonstration projects as "public information" notwithstanding the fact that they might be exempted from disclosure under the FOIA and thus within the scope of § 6 (a)(1). Section 25 (c), however, specifically makes the disclosure of this information subject to the limitations of §§ 6 (a)(2) and 6 (b), whether it be "affirmatively" released by the Commission or released pursuant to an FOIA request. The language of the CPSA thus provides little basis for accepting petitioners' claim that § 6 (b)(1) does not apply to information released by the Commission in response to FOIA requests.

## III

Petitioners next argue that the legislative history of the CPSA requires the conclusion that § 6 (b)(1) is inapplicable to FOIA requests despite the language of the statute. In making their argument, petitioners concede that "the pre-enactment history of this legislation does not directly address the precise issue of statutory construction involved in this case." Brief for Petitioners 33. They nonetheless maintain that the principal concern underlying the adoption of the section was the danger that the Commission might on its own initiative disseminate findings, reports, and other product information harmful to manufacturers without first assuring

---

[6] Section 25 (c), as set forth in 15 U. S .C. § 2074 (c), states:

"Subject to sections 2055 (a)(2) and 2055 (b) of this title but notwithstanding section 2055 (a).(1) of this title, (1) any accident or investigation report made under this chapter by an officer or employee of the Commission shall be made available to the public in a manner which will not identify any injured person or any person treating him, without the consent of the person so identified, and (2) all reports on research projects, demonstration projects, and other related activities shall be public information."

the fairness and accuracy of the disclosure. We agree with petitioners that industry representatives were concerned about the harms resulting from information affirmatively disclosed by an agency. But petitioners have failed to establish that industry concerns were limited to information disclosed in this fashion.[7] More importantly, a full examination of the legislative history of the CPSA prior to its enactment indicates that for purposes of § 6 (b)(1) no distinction was made between information affirmatively disclosed by the Commission and information released pursuant to the FOIA.

The CPSA gave the Commission broad powers to gather, analyze, and disseminate vast amounts of private information. In granting the Commission such authority, Congress adopted safeguards specifically designed to protect manufacturers' reputations from damage arising from improper disclosure of

---

[7] Thus, although as petitioners point out, a vice president of General Electric Co., James F. Young, cautioned against the dangers of information "[i]ssued under the dignity and with the apparent imprimatur of the U. S. Government," Consumer Product Safety Act: Hearings before the Subcommittee on Commerce and Finance of the House Committee on Interstate and Foreign Commerce, 92d Cong., 1st and 2d Sess., pt. 3, p. 1065 (1971–1972) (hereinafter Subcommittee Hearings), other statements by industry representatives expressed more general concerns about the disclosure by the Commission of information relating to product safety. For example, Bernard H. Falk, president of the National Electrical Manufacturers Association, stated that "[n]o information should be disclosed which is inaccurate, misleading or incomplete." *Id.*, at 1197. And in a prepared statement George P. Lamb, general counsel of the Association of Home Appliance Manufacturers, voiced the following concern:

"Authority to collect and disseminate information carries with it a responsibility not to disclose data that may injure a company or reveal confidential information. A statute establishing a standards-setting agency should state explicitly, as do many other federal statutes, that confidential data are not to be disseminated. A statute should also assure that *any* information to be made public is accurate, and that if it is derogatory the company it identifies has had an opportunity to refute it. H. R. 8110 contains provisions in § 4 (c) that would accomplish this." *Id.*, at 1237 (emphasis added).

information gathered and received by the Commission. The House Report on the CPSA states:

> "If the Commission is to act responsibly and with adequate basis, it must have complete and full access to information relevant to its statutory responsibilities. Accordingly, the committee has built into this bill broad information-gathering powers. It recognizes that in so doing it has recommended giving the Commission the means of gaining access to a great deal of information which would not otherwise be available to the public or to Government. Much of this relates to trade secrets or other sensitive cost and competitive information. Accordingly, the committee has written into section 6 of the bill detailed requirements and limitations relating to the Commission's authority to disclose information which it acquires in the conduct of its responsibilities under this act." H. R. Rep. No. 92–1153, p. 31 (1972).[8]

---

[8] The provisions of § 6 of the CPSA, as finally enacted, can be traced to H. R. 8110, 92d Cong., 1st Sess. (1971), a bill introduced in the House on behalf of the administration. Section 4 (c) of this bill, which was also introduced in the Senate, contained information disclosure limitations that were virtually identical to those ultimately enacted in § 6 (b)(1) of the CPSA. It provided:

"(1) Nothing contained in this Act shall be deemed to require the release of any information described by subsection (b) of section 552, title 5, United States Code, or which is otherwise protected by law from disclosure to the public. The Secretary shall not make public information obtained by him under this Act which would disclose trade secrets, formulas, processes, costs, methods of doing business, or other competitive information not otherwise available to the general public; or the names or other means of identification of ill or injured persons without their express written consent.

"(2)(A) Except as provided by subparagraph (B) of this paragraph, not less than thirty days prior to his public disclosure of any information obtained under this Act, or to be disclosed to the public in connection therewith, the Secretary shall provide such information to each manufacturer of any consumer product to which such information pertains, if

The House Report does not provide any indication that the safeguards for the release of CPSA information are inapplicable when the Commission discloses information in response to an FOIA request. And in its explanatory comments on § 6 (b)(1) the Report makes no distinction whatsoever between information released at the initiative of the Commission

the manner in which such consumer product is to be designated or described in such information will permit the public to ascertain readily the identity of such manufacturer, and shall provide such manufacturer with a reasonable opportunity to submit comments to the Secretary in regard to such information. Upon the request of such manufacturer, the Secretary shall publish such comments or a fair summary thereof, or a statement of the manufacturer of reasonable length in lieu thereof, concurrently and in association with the disclosure of the information to which such comments or statement appertain. The Secretary shall take reasonable steps to assure, prior to his public disclosure thereof, that information from which the identity of such manufacturer may be readily ascertained is accurate, and that such disclosure is fair in the circumstances and reasonably related to effectuating the purposes of this Act. If the Secretary finds that, in the administration of this Act, he has made public disclosure of inaccurate or misleading information which reflects adversely upon the safety of any consumer product, or the practices of any manufacturer of, distributor of, importer of, or dealer in consumer products, he shall, in a manner similar to that in which such disclosure was made, publish a retraction of such inaccurate or misleading information.

"(B) Subparagraph (A) (except for the last sentence thereof) shall not apply to the public disclosure of (i) information about any consumer product with respect to which product the Attorney General has filed an action (or an action against a manufacturer thereof with respect to such product) under section 12, or which the Secretary has reasonable cause to believe is in violation of section 15, or (ii) information about any administrative or judicial proceeding under this Act."

Although the bill passed by the Senate omitted these safeguards, see S. Rep. No. 92–749, pp. 49, 51 (1972), the bill passed by the House, H. R. 1503, incorporated the administration's proposal in this regard. See H. R. Rep. No. 92–1153, pp. 5, 24 (1972). The information disclosure limitations contained in H. R. 15003 were accepted by the Conference Committee and ultimately became law. See H. R. Conf. Rep. No. 92–1593, p. 7 (1972).

and information disclosed pursuant to an FOIA request. Rather, it states:

"Before disseminating *any* information which identifies the manufacturer or private labeler of a product, the Commission is directed to give the manufacturer or private labeler 30 days in which to comment on the proposed disclosure of information. This procedure is intended to permit the manufacturer or private labeler an opportunity to come forward with explanatory data or other relevant information for the Commission's consideration." H. R. Rep. No. 92–1153, *supra*, at 32 (emphasis added).

Nor does the Conference Report contain any suggestion that § 6 (b)(1) does not apply to FOIA requests. As observed by the Court of Appeals, the "conferees' description of section 6 (b)(1) is instructive in that the accuracy and fairness requirements for 'publicly disclosed information' are mentioned in almost the same breath as the description of section 6 (a) (1), stating that no information need be 'publicly disclosed' by the Commission if it is exempt from disclosure under the FOIA." 598 F. 2d, at 809.[9]

Further support for this construction of § 6 (b)(1) can be found in examining comments made with respect to earlier versions of the House bill.[10] In commenting on the disclosure

---

[9] The Conference Report stated:

"The Commission was directed to take steps to assure that publicly disclosed information from which specific manufacturers or distributors could be identified was accurate and that the disclosure was fair in the circumstances and reasonably related to carrying out its duties. No information would be required to be publicly disclosed if it is information described in section 552 (b), title 5, United States Code (relating to information which is entitled to be protected from public access under the Freedom of Information Act), or which is otherwise protected by law from disclosure to the public." *Id.*, at 41.

[10] The conclusion that § 6 (b)(1) applies to FOIA requests is also supported by a statement of Representative James Broyhill, a member of the

provisions of the administration bill, H. R. 8110, Representative Moss, chairman of the Subcommittee on Commerce and Finance, which was considering the House bills, stated: "I am sure the subcommittee will want to examine carefully this proposed change in the Freedom of Information Act." Subcommittee Hearings, pt. 2, p. 300.[11] The operative information-disclosure requirements contained in § 4 (c) of H. R. 8110, absent a requirement that the Commission publish manufacturers' comments, were nonetheless enacted into law in § 6 (b). See n. 8, *supra.*

Section 4 (c) and the provision that was finally enacted as § 6 (b) by their terms include both affirmative disclosures by the Commission and information released pursuant to the FOIA. And the Department of Health, Education, and Welfare, the agency that drafted H. R. 8110, stated in its section-by-section analysis of the bill:

> "*Section 4 (c)* would protect the Secretary's refusal to disclose information not required to be released by the [FOIA], and would expressly prohibit his disclosure of commercial secrets, or of illness or injury data revealing [the] identity of the victim.
>
> "It would also require the provision of thirty days notice to the manufacturer of any consumer product prior to the Secretary's public disclosure of information respecting that product, if such information would reveal the manufacturer's identity." Subcommittee Hearings, pt. 1, p. 188.

Conference Committee on the CPSA. In the House debates on the CPSA, Representative Broyhill stated that the proposed legislation, H. R. 15003, "requires the Commission to notify each manufacturer of its intent to release *any* information at least 30 days prior to disclosure and offer an opportunity for comment. This provision is not found in any other safety legislation." 118 Cong. Rec. 31381 (1972) (emphasis added).

[11] The statement was made following his observation that the administration bill, H. R. 8110, contained more restrictive disclosure provisions than his own bill, H. R. 8157. Subcommittee Hearings, pt. 2, p. 300.

These comments clearly do not support petitioners' reading of the present disclosure requirements of the CPSA. And the General Counsel of the Department of Commerce, in opposing the Senate's less restrictive proposal for the disclosure of information by the Commission, wrote:

"[W]e believe that in the interest of fairness the disclosure of *any* information should be attendant with safeguards. These include prior notice to manufacturers, the right of the manufacturer to rebut false information, and a requirement that the information be fair and accurate." S. Rep. No. 92–749, p. 100 (1972) (emphasis added).

The legislative history of § 6 (b)(1) thus fails to establish that petitioners' proposed distinction should be read into the section.

IV

Petitioners also contend that legislative interpretations of § 6 (b)(1) made after the section was enacted and the Commission's administrative interpretation of that section support their proposed construction. Petitioners first rely on a statement by Representative Moss, one of the sponsors of the House bill. In testimony before a congressional Oversight Subcommittee, then Commission Chairman Richard O. Simpson explained that the Commission interpreted § 6 (b)(1) to be inapplicable to FOIA requests. Representative Moss then remarked: "As the primary author of both acts, I am inclined to agree with you." Regulatory Reform: Hearings before the Subcommittee on Oversight and Investigations of the House Committee on Interstate and Foreign Commerce, 94th Cong., 2d Sess., Vol. IV, pp. 7–8 (1976). Petitioners also note that when Congress added § 29 (e), 15 U. S. C. § 2078 (e), to the CPSA in the Consumer Product Safety Commission Improvements Act of 1976, the Conference Committee explained the joint operation of the new section and § 6 (b) as follows:

"The requirement that the Commission comply with section 6 (b) prior to another Federal agency's public

disclosure of information obtained under the Act is not intended by the conferees to supersede or conflict with the requirements of the Freedom of Information Act (5 U. S. C. § 552 (a)(3) and (a)(6)). *The former relates to public disclosure initiated by the Federal agency while the latter relates to disclosure initiated by a specific request from a member of the public under the Freedom of Information Act.*" H. R. Conf. Rep. No. 94–1022, p. 27 (1976) (emphasis added).[12]

In evaluating the weight to be attached to these statements, we begin with the oft-repeated warning that "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *United States* v. *Price,* 361 U. S.

---

[12] Section 29 (e) was added to the CPSA to "prescrib[e] conditions under which the Commission may provide accident and investigation reports to other Federal agencies or State or local authorities engaged in activities relating to health, safety, or consumer protection." H. R. Conf. Rep. No. 94–1022, at 26. Section 29 (e), 90 Stat. 510, provides:

"The Commission may provide to another Federal agency or a State or local agency or authority engaged in activities relating to health, safety, or consumer protection, copies of any accident or investigation report made under this Act by any officer, employee, or agent of the Commission only if (1) information which under section 6 (a)(2) is to be considered confidential is not included in any copy of such report which is provided under this subsection; and (2) each Federal agency and State and local agency and authority which is to receive under this subsection a copy of such report provides assurances satisfactory to the Commission that the identity of any injured person and any person who treated an injured person will not, without the consent of the person identified, be included in—

"(A) any copy of any such report, or

"(B) any information contained in any such report,

"which the agency or authority makes available to any member of the public. No Federal agency or State or local agency or authority may disclose to the public any information contained in a report received by the agency or authority under this subsection unless with respect to such information the Commission has complied with the applicable requirements of section 6 (b)."

304, 313 (1960), quoted in *United States* v. *Philadelphia National Bank,* 374 U. S. 321, 348–349 (1963).[13]   And ordinarily even the contemporaneous remarks of a single legislator who sponsors a bill are not controlling in analyzing legislative history.   *Chrysler Corp.* v. *Brown,* 441 U. S. 281, 311 (1979). We do not think that either Representative Moss' isolated remark or the *post hoc* statement of the Conference Committee with respect to § 6 (b) is entitled to much weight here.

While Representative Moss claimed sponsorship of the CPSA generally, he was not a sponsor of the original bill that ultimately provided that legislation with its provisions governing information disclosure.   Rather he authored another bill, H. R. 8157, that contained much less restrictive disclosure requirements than those ultimately adopted.[14]   His state-

---

[13] Petitioners invoke the maxim that states: "Subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction." *Red Lion Broadcasting Co.* v. *FCC,* 395 U. S. 367, 380–381 (1969) (footnote omitted).   With respect to subsequent *legislation,* however, Congress has proceeded formally through the legislative process.   A mere statement in a conference report of such legislation as to what the Committee believes an earlier statute meant is obviously less weighty.

The less formal types of subsequent legislative history provide an extremely hazardous basis for inferring the meaning of a congressional enactment.   While such history is sometimes considered relevant, this is because, as Mr. Chief Justice Marshall stated in *United States* v. *Fisher,* 2 Cranch 358, 386 (1805): "Where the mind labours to discover the design of the legislature, it seizes every thing from which aid can be derived." See *Andrus* v. *Shell Oil Co.,* 446 U. S. 657, 666, n. 8 (1980).   Such history does not bear strong indicia of reliability, however, because as time passes memories fade and a person's perception of his earlier intention may change.   Thus, even when it would otherwise be useful, subsequent legislative history will rarely override a reasonable interpretation of a statute that can be gleaned from its language and legislative history prior to its enactment.

[14] Section 19 (d) of H. R. 8175, 92d Cong., 1st Sess. (1971), provided:

"When the Commission finds that publication of any information obtained by it is in the public interest and would not give an unfair competitive advantage to any person, it is authorized to publish such informa-

ment is thus not one that provides a reliable indication as to congressional intention.[15]

An examination of the statement of the Conference Committee, as the Court of Appeals concluded, reveals that it also is not persuasive authority in support of petitioners' position. Section 29 (e) by its terms does not purport to interpret the scope of § 6 (b). Rather, it deals solely with the release of accident and investigation reports by the Commission to other agencies. See n. 12, *supra.* And as the Court of Appeals stated:

"[T]he conference committee statement was made in the context of approving legislation that contained numerous and extensive amendments to the Consumer Product Safety Act; yet the problem before us here was not otherwise addressed by Congress in enacting the Improvements Act. The interpretation of section 6 (b) espoused by the conferees was not mentioned by the House committee that drafted the Improvements Act. *See* H. R. Rep. No. 94–325, 94th Cong., 1st Sess. 18 (1975). The Senate version of the Improvements Act did not contain a provision amending section 29. [H. R. Conf. Rep. No. 94–1022, p. 26.] In the debates in the House the amendment to section 29, and the relationship between section 6 (b) and the FOIA, were not

_____

tion in the form and manner deemed best adapted for public use, except that data and information which relates to a trade secret, shall be held confidential and shall not be disclosed, unless the Commission determines that it is necessary to carry out the purposes of this Act." Subcommittee Hearings, pt. 1, p. 68–69.

[15] In addition, Chairman Simpson submitted to the Oversight Subcommittee a proposed amendment to § 6 (b)(2) that would have added the release of information by the Commission under the FOIA to the list of exceptions from the requirements of § 6 (b)(1). Regulatory Reform: Hearings before the Subcommittee on Oversight and Investigations of the House Committee on Interstate and Foreign Commerce, 94th Cong., 2d Sess., Vol. IV, p. 8 (1976). That proposed amendment was never reported out of Committee.

mentioned. Nor was the conferees' interpretation of section 6 (b) mentioned in either House when the conference report was debated. See 122 Cong. Rec. 10,811 (House approval of the conference report); *id.*, 11,585 (Senate approval) (1976)." 598 F. 2d, at 810–811.

In light of this background, the statement of the Conference Committee is far from authoritative as an expression of congressional will under the oft-quoted factors enunciated in *Skidmore* v. *Swift & Co.*, 323 U. S. 134, 140 (1944).[16] For the same reasons, we reject petitioners' contention that the Commission's 1977 administrative interpretation should be afforded the degree of deference necessary for it to prevail here. See 42 Fed. Reg. 54304 *et seq.* (1977). This case presents a narrow legal issue that is readily susceptible of judicial resolution. Nor are we presented here with a situation in which there has been a longstanding contemporaneous administrative construction upon which those subject to the jurisdiction of the agency would have been likely to rely.[17]

---

[16] Petitioners also assert that under § 29 (e) agencies that receive accident and investigation reports from the Commission would not have to comply with § 6 (b) (1) when FOIA requests are made for information in such reports, and thus there would be an inconsistency in the statutory scheme if the Commission were required to comply with § 6 (b) (1) before releasing such information. Although the other agencies themselves may not be required to comply with § 6 (b) (1), the inconsistency is nonetheless not readily apparent in that § 29 (e) states that "[n]o Federal agency or State or local agency or authority may disclose to the public any information contained in a report received by the agency or authority under this subsection unless with respect to such information the Commission has complied with the applicable requirements of section 6 (b)." In any event, we need not address the scope of § 29 (e) here.

[17] The Commission did not reach its present interpretation of the statute until it met in executive session on October 6, 1975, 443 F. Supp. 1152, 1155, n. 6 (1977)—over six months after it had decided to release the information involved in this case and more than two months after the manufacturers' motions for preliminary injunction had been fully briefed and argued before the District Court. And it was not until October 5, 1977—two days before the Commission filed its brief opposing the manu-

## V

Petitioners next argue that the interpretation of § 6 (b)(1) by the Court of Appeals is inconsistent with the FOIA time requirements for the release of information. The FOIA requires an agency to "determine within ten days . . . whether to comply with [an FOIA] request" and to notify the requester "immediately" of the agency's determination. 5 U. S. C. § 552 (a)(6)(A)(i). The FOIA also requires an agency to resolve any administrative appeal of a refusal to disclose within 20 days after the filing of the appeal. § 552 (a)(6)(A)(ii). Petitioners claim that if § 6 (b)(1) applies to FOIA requests the Commission will be unable to comply with FOIA time requirements.

Petitioners' argument assumes that despite the specific procedural safeguards set forth in § 6 (b)(1) the Commission must comply with FOIA time limitations. Federal agencies, however, are granted discretion to refuse FOIA requests when the requested material falls within one of the nine statutory exemptions set forth in 5 U. S. C. § 552 (b). Exemption 3 of the FOIA, 5 U. S. C. § 552 (b)(3), states that the FOIA does not apply to matters that are

"specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." [18]

facturers' motions for summary judgment (App. 7) and two years after the District Court concluded that the Commission must comply with § 6 (b)(1) in responding to FOIA requests, 404 F. Supp., at 370—that the Commission's proposed rules were published. See 42 Fed. Reg. 54, 304 (1977). It is thus arguable that the Commission's interpretation here is primarily litigation inspired. Cf. *Davies Warehouse Co.* v. *Bowles*, 321 U. S. 144, 156 (1944).

[18] This exemption was amended in 1976 by § 5 (b) of the Government in the Sunshine Act, Pub. L. 94–409, 90 Stat. 1247. The amendment

Here § 6 (b) (1) sets forth sufficiently definite standards to fall within the scope of Exemption 3. It does not grant the Commission broad discretion to refuse to comply with FOIA requests. Rather, it requires that the Commission "take reasonable steps to assure" (1) that the information is "accurate," (2) that disclosure will be "fair in the circumstances," and (3) that disclosure will be "reasonably related to effectuating the purposes of [the CPSA]." [19] We therefore do not

---

was to further define those statutes that "specifically exempt" material from disclosure. The Conference Report to the Sunshine Act states that the amendment was designed "to overrule the decision of the Supreme Court in *Administrator, FAA* v. *Robertson,* 422 U. S. 255 (1975), which dealt with section 1104 of the Federal Aviation Act of 1958 (49 U. S. C. 1504)." H. R. Conf. Rep. No. 94–1441, p. 25 (1976). *Robertson* held that § 1104, which vested broad discretion in the Federal Aviation Administration to withhold information from the public, fell within the scope of Exemption 3. The amendment was designed to eliminate from Exemption 3 those statutes that granted administrative agencies such discretion with respect to the disclosure or nondisclosure of material within their possession. As stated in the Report of the House Committee on Government Operations on the Sunshine Act, which recommended the amendment:

"Believing that the decision misconceives the intent of exemption (3), the committee recommends that the exemption be amended to exempt only material required to be withheld from the public by any statute establishing particular criteria or referring to particular types of information. The committee is of the opinion that this change would eliminate the gap created in the Freedom of Information Act by the *Robertson* case without in any way endangering statutes such as the Atomic Energy Act of 1954, 42 U. S. C. §§ 2161–2166, which provides explicitly for the protection of certain nuclear data.

"Under the amendment, the provision of the Federal Aviation Act of 1958 that was the subject of *Robertson,* and which affords the FAA Administrator *cart blanche* [*sic*] to withhold any information he pleases, would not come within exemption 3. . . ." H. R. Rep. No. 94–880, pt. 1, p. 23 (1976).

[19] The statute in *Robertson,* by contrast, provided:

"Any person may make written objection to the public disclosure of information contained in any application, report, or document filed pursuant to the provisions of this Act or of information obtained by the Board or the Administrator, pursuant to the provisions of this Act,

believe there is any insoluble conflict between § 6 (b)(1) and the FOIA.[20]

## VI

Finally, petitioners argue that requiring the Commission to comply with § 6 (b)(1) in meeting FOIA requests will impose insurmountable burdens on the agency. In making this claim, petitioners state that the Commission receives nearly 8,000 FOIA requests annually. The extent to which these requests will present problems of fairness and accuracy with respect to the information released by the Commission is entirely speculative. And in light of the fact that Exemption 3 is applicable to the disclosure of information controlled by § 6 (b)(1), we do not think these burdens will prove to be unbearable. Most importantly, our interpretation of the language and legislative history of § 6 (b)(1) reveals that any increased burdens imposed on the Commission as a result of its compliance with § 6 (b)(1) were intended by Congress in striking an appropriate balance between the interests of

---

stating the grounds for such objection. Whenever such objection is made, the Board or Administrator shall order such information withheld from public disclosure when, in their judgment, a disclosure of such information would adversely affect the interests of such person and is not required in the interest of the public. The Board or Administrator shall be responsible for classified information in accordance with appropriate law: *Provided,* That nothing in this section shall authorize the withholding of information by the Board or Administrator from the duly authorized committees of the Congress." § 1104, 72 Stat. 797, 49 U. S. C. § 1504.

[20] In addition, when Congress enacted the CPSA in 1972, the FOIA required only that an agency make records "promptly available" to any person requesting them. Pub. L. 90–23, 81 Stat. 55. It was not until 1974, when Congress amended the FOIA, that the time requirements that petitioners argue conflict with § 6 (b)(1) were adopted. Pub. L. 93–502, § 1 (c), 88 Stat. 1562, 5 U. S. C. § 552 (a)(6). Because § 6 (b)(1) has not been amended since 1972, these requirements also do not provide a sound basis for inferring a congressional intent to limit the application of § 6 (b)(1) to disclosures initiated by the Commission.

consumers and the need for fairness and accuracy with respect to information disclosed by the Commission. Thus, petitioners' claim that the Commission's compliance with the requirements of § 6 (b)(1) will impose undue burdens on the Commission is properly addressed to Congress, not to this Court.

For the foregoing reasons, the judgment of the Court of Appeals for the Third Circuit is

*Affirmed.*