**AMERICAN MOVING AND STORAGE ASSOC., INC., et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF DEFENSE, Defendant.**

No. Civ.A.99–0727JLG.

United States District Court, District of Columbia.

March 29, 2000.

Thomas M. Auchincloss, Jr., Brian L. Troiano, Rea, Cross & Auchincloss, Washington, DC, for plaintiffs.

Vincent M. Garvey, Glen Staszewski, Civil Division, U.S. Department of Justice, Washington, DC (Major Richard C. Gross, Litigation Attorney, U.S. Army Litigation Division, Arlington, VA, of counsel), for defendant.

**MEMORANDUM**

JUNE L. GREEN, District Judge.

This matter is before the Court on the parties' cross-motions for Summary Judgment pursuant to Fed.R.Civ.P. 56. For the reasons that follow, Defendant's motion is granted and Plaintiffs' motion is denied.

## I. BACKGROUND

The material facts in this case are not disputed. (Joint Report at 2; Pls.' Mot. at 4; Def's. Mot. at 12.) The Plaintiffs are small business carriers who provide transportation services to Defendant U.S. Department of Defense ("DOD") under procurement contracts and their trade association, the American Moving and Storage Association. (Pls'. Facts at ¶ 12, 13.) In November 1998, the U.S. Army Military Traffic Management Command ("MTMC"), the component of DOD responsible for moving military goods, published a Notice in the *Federal Register* announcing it intended to make a significant procurement policy change. (Def's.Facts, ¶ 4.) The MTMC proposed to change its source for distance calculations for payments and audits in its transportation procurement programs from a previously used official mileage table to a new computer software product known as PC*Miler. (*Id.*, ¶ 4.) The proposal followed the Fiscal Year 1996 Defense Authorization Act which eliminated the requirement that DOD keep an official mileage table, allowing the MTMC to use a commercial mileage product to calculate travel mileage distances. (Pls'.Facts, ¶ 1.)

The Plaintiffs submitted comments opposing the change, alleging it would have a significant economic impact on small carriers and that the proposal must comply with the Regulatory Flexibility Act, 5 U.S.C. § 601, *et seq.*, ("RFA"). (Pls'.Facts, ¶ 9.) The RFA requires agencies to prepare for public comment a regulatory flexibility analysis[1] describing the

---

1. The analysis has two stages, initial and final.

impact of a proposed rule on small businesses whenever the agency is required by Section 553 of the Administrative Procedure Act ("APA") or another law "to publish general notice of proposed rulemaking for any proposed rule." 5 U.S.C. § 603(a). Notwithstanding the Plaintiffs' opposition, in December 1998 the DOD announced its final agency action to implement the new system, indicating that it anticipated no significant impact on small carriers and asserting that the procurement policy change did not have to comply with the RFA's flexibility analysis, which was never prepared. (Pls'. Facts at 7.) The Plaintiffs now seek a declaratory judgment that the procurement policy change was subject to the RFA. (Compl., ¶ 12.)

## II. *ANALYSIS*

The sole issue of law in this case is whether the RFA applies to the DOD procurement policy change. (Compl., ¶ 12; Joint Report at 2.) Plaintiffs allege that the Office of Federal Procurement Policy Act in its amended form ("OFPPA"), 41 U.S.C. § 401, *et seq.*, required the DOD to publish a general notice of its proposed change from the official mileage table to the commercial mileage calculation product. (Pls'. Mem. at 5–10.) They argue that the policy change is a "rule" under the RFA, which imposes its flexibility analysis requirement on an agency's "proposed rule."[2] 5 U.S.C. § 603(a). Defendant DOD, however, alleges that the policy change is not a "rule" as defined by the RFA and therefore no flexibility analysis is required. (Def's. Mem. at 23.)

2. Plaintiffs, however, do not allege that the APA requires the DOD to publish general notice of proposed rulemaking for the procurement policy change given DOD's assertion that the policy matter falls under the "military function" and "public contracts" exemptions from the general notice of proposed rulemaking requirements of the APA. (Pls'. Mem. at 12; Def's. Reply at 9.)

3. "[N]o procurement policy, regulation, procedure, or form ... relating to the ex-

## A. OFPPA Publication Requirement

■ The RFA defines the term rule as "*any rule for which the agency publishes a general notice of proposed rulemaking pursuant to section 553(b) of this title, or any other law ....* " 5 U.S.C. § 601(2) (emphasis added). Defendant DOD asserts that the OFPPA does not require it to publish a general notice of proposed rulemaking and thus the procurement policy change is not a "rule" under the RFA definition. Although DOD acknowledges that the OFPPA requires agencies to publish for public comment proposed procurement policies, regulations, procedures, and forms, it asserts that this requirement is distinguishable from one for general notice of proposed rulemaking.[3] 41 U.S.C. § 418b; (Def's. Mem. at 23.) DOD raises several reasons why the OFPPA is distinguishable that the Court finds compelling.

First, the plain language of the publication requirement of the OFPPA does not apply to publication of rules, but rather to procurement policies, regulations, procedures, and forms. (*Id.* at 26.) Second, the Court finds that statutes that do impose general notice of proposed rulemaking requirements have publication, comment, and issuance requirements that are more stringent than the OFPPA and even the APA. (Def's. Mem. at 26, n. 9.) The Court believes that the OFPPA is textually distinguishable from the typical "organic" rulemaking statutes that are tailored to specific agencies as they, unlike the OFPPA, expressly require "notice of proposed rulemaking," or refer to "rulemaking" and the issuance of "rules." (Def's. Mem. at 25–26; Reply at 11–12.) For example, the

penditure of appropriated funds that has (1) a significant effect beyond the internal operating procedures of the agency issuing the procurement policy, regulation, procedure or form, or (2) significant cost or administrative impact on contractors or offerors, may take effect until 60 days after the procurement policy, regulation, procedure, or form is published, for public comment in the Federal Register...."
41 U.S.C. § 418b(a).

Consumer Product Safety Act states that "the development of a consumer product safety rule" by the Consumer Product Safety Commission "shall be commenced by the publication in the Federal Register of an advance notice of proposed rulemaking." 15 U.S.C. § 2058. Similarly, the Federal Food, Drug, and Cosmetic Act provides that the Secretary of Health and Human Services "shall publish in the *Federal Register* a notice of proposed rulemaking for the establishment, amendment, or revocation of any performance standard for a device." 21 U.S.C. § 360(b)(1)(A). The Occupational Safety and Health Act of 1970, 29 U.S.C. § 655, articulates the manner in which the Secretary may "by rule" promulgate, modify, or revoke any occupational safety or health standard. The Federal Trade Commission Improvement Act of 1974, 15 U.S.C. § 57a, describes the authority of the Commission to "prescribe rules" and the procedures applicable to such rulemaking. The Department of Energy Organization Act of 1977, 42 U.S.C. § 7607(d), articulates the procedures for "rulemaking" under the Act. Third, the Court agrees with the DOD's analysis that procurement policies concerning contracts to purchase services from the private sector are functionally dissimilar to "rulemaking."[4] (Def's. Mem. at 28.)

For their part, Plaintiffs argue that the OFPPA's publication for comment procedure involves "rulemaking" as defined by the APA. They cite *Batterton v. Marshall*, 648 F.2d 694 (D.C.Cir.1980), in which the Appeals Court explained that under the APA

> [r]ulemaking must be accompanied by (1) advance publication in the Federal Register of the proposed rule or its substance; (2) opportunity for public participation through submission of written comments, with or without oral presentation; and (3) publication of the final rule, incorporating a concise statement of its basis and purpose, thirty days before its effective date.

*Batterton*, 648 F.2d at 700. Although the Plaintiffs analogize the procedures in OFPPA to APA rulemaking, it appears to the Court that the similarities fall short. For one, the OFPPA publication for comment requirement[5] does not reach the standard of APA "rulemaking." 41 U.S.C. § 418b(b), (c). The OFPPA does not require statements of basis and purpose to justify a final rule nor does it involve such an expansive level of public participation as rulemaking under APA, which affords the right "to petition for the issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(c), (d).

Indeed, statutory delegation of authority to engage in general notice and comment rulemaking is rare. In *Bowen v. Georgetown*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493, (1988), the Supreme Court established "that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Id.* at 208, 109 S.Ct. 468; (Def's. Mem. at 28.) Insofar as the prerequisite of statutory delegation of authority makes general notice and comment rulemaking rare, the existence of mere publication and comment procedures is not a sufficient showing for this Court to conclude that the OFPPA delegated rulemaking authority to the DOD.

Plaintiffs also rely on arguments from the legislative history of the OFPPA for

---

4. DOD further argues that unlike other agencies, it does not engage in rulemaking with regard to the conduct of private parties. It explains that although other agencies have statutory authority to establish rules expressly governing the conduct of private entities. It states that the DOD's function with defense contractors arises out of contract and not administrative rulemaking law. (*Id.* at 28.) Although this argument appears specific to DOD, the application of OFPPA to an agency not engaged in rulemaking may suggest that the OFPPA itself does not involve rulemaking.

5. The OFPPA requires the text or summary of the proposed procurement policy change to be published with a request for interested parties to submit their comments. 41 U.S.C. § 418b(b), (c).

**136**

their analogy.[6] This history suggests that Congress recognized that it could have applied APA rulemaking requirements on procurement policies simply by removing the contracts exemption from the APA. S.Rep. No. 93–629 . (1974), *reprinted in* U.S.C.C.A.N. 4589, 4601–4602. Congress, instead, enacted the OFPPA. Plaintiffs argue that in doing so Congress intended to replicate the APA rulemaking procedures. (Pl's. Mem. at 9.) That interpretation, however, is flawed. In passing the OFPPA Congress expressly declined to subject procurement policies to the general notice of proposed rulemaking requirements of the APA. *Id.* Any analysis of legislative history, however, is premature and of little value as the plain language of the RFA consistently makes it applicable to procurement policies, regulations, procedures, and forms rather than rules. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).

Considering the rarity of Congress's delegation of general notice and comment rulemaking, the function of procurement policies in contracts with the private sector, the plain language of the OFPPA, and its differences from rulemaking statutes, the Court finds that the OFPPA does not require general notice of proposed rulemaking. As the procurement policy change here is thus not a "rule" under the RFA, no flexibility analysis is required.

**B. RFA Exemption for Practices Relating to Rates**

▇ Defendant further alleges that even if the RFA definition of a "rule" includes some procurement policy changes, its change in the source by which distance calculations for payments and audits are made is exempt from the definition by the exception for practices relating to rates.

(Def's. Reply at 7.) Within the RFA definition, there is an explicit and broad

> except[ion] that the term "rule" does not include a rule of particular applicability relating to rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services, or allowances therefor or to valuations, costs or accounting, or practice relating to such rates, wages, structures, prices, appliances, services, or allowances.

5 U.S.C. § 601(2). DOD asserts that the method the MTMC employs to determine how to measure *point-to-point distances in* compensating carriers for mileage under MTMC transportation contracts is a "practice relating to [the] rates" that it pays for each "particular" transportation contract into which it enters. Indeed, as the Plaintiffs recognize, the procurement policy change here concerns "rate solicitations governing carriers participating in Defendant's transportation programs." (Pl's. Mem. at 5.) Accordingly, the Court finds that even if the term "rule" in the RFA included some procurement policy changes, the exception for practices relating to rates would apply here.

### III. *CONCLUSION*

For the reasons stated, the Court finds that the RFA does not apply to the DOD procurement policy decision changing its distance calculation source to PC*Miler computer software, the sole issue of law in this case. Accordingly, the Defendant's motion for Summary Judgment is granted and the Plaintiffs' motion is denied.

---

**6.** Plaintiffs cite floor remarks by Senator Bumpers in 1984 during deliberations over amendments to the OFPPA stating that a publication requirement in the OFPPA would trigger compliance with the RFA, enacted in 1980. However, there is little, if any, probative value in an individual legislator's view, especially as to their understanding of the intent of a prior Congress. *Consumer Product Safety Comm'n. v. GTE Sylvania, Inc.*, 447 U.S. 102, 117, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980); *Texas Mun. Power Agency v. EPA*, 89 F.3d 858, 875 (D.C.Cir.1996).