635 F.Supp. 335 (1986)
I.A.M. NATIONAL PENSION FUND BENEFIT PLAN A, et al. Plaintiffs,
v.
COOPER INDUSTRIES, INC. Defendant.
Civ. A. No. 84-3346.
United States District Court, District of Columbia.
May 21, 1986.
*336 Robert T. Osgood, Joseph P. Martocci, Jr., Washington, D.C., for plaintiffs.
Carl L. Taylor, Betty S. Wommack, Glenn Summer, Kirland & Ellis, Washington, D.C., for defendant.
Edward R. Mackiewicz, Baruch A. Fellner, J. Stephen Caflisch, Peter H. Gould, Kenton Hambrick, Washington, D.C., for amicus curiae Pension Ben. Guar. Corp.

*337 OPINION
JUNE L. GREEN, District Judge.
Plaintiffs brought this action to collect withdrawal liability payments from defendant pursuant to the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381-1405, 1451 (1982). Defendant counterclaimed asserting that plaintiffs' assessment of liability rests on an invalid interpretation of the governing statute, section 4204 of the MPPAA, 29 U.S.C. § 1384 ("section 1384"). Both parties have moved for summary judgment.
Pursuant to the Court's order of June 28, 1985, ruling that the legal claims asserted by defendant could be addressed by this Court, the parties submitted additional memoranda addressing the interpretation of section 1384. For the reasons set forth below, the Court grants defendant's motion for summary judgment and denies plaintiffs' motion.

I. Background

Plaintiff I.A.M. National Pension Fund ("the Fund"), Benefit Plan A ("the Plan") is a multiemployer pension plan within the meaning of 29 U.S.C. § 1002(37). Plaintiffs Eugene Glover and Lester F. Gettle, Jr. are co-chairmen of the Board of Trustees of the Plan and are fiduciaries within the meaning of 29 U.S.C. § 1132(a)(3). Plaintiff Board of Trustees of the Fund is the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16).
Defendant Cooper Industries, Inc. ("Cooper") is an "employer" within the meaning of 29 U.S.C. § 1002(5). Cooper, through one or more of its subdivisions contributed, under the terms of various collective bargaining agreements, to the Plan from 1967 until May 25, 1984.
Effective December 10, 1981, Cooper sold the assets of one of its divisions, Cooper Airmotive, to Aviall, Inc. ("Aviall"). Cooper and Aviall structured the transaction and obtained the necessary bonding to comply with the MPPAA sale of assets provision, section 1384. That section provides an exception to the rule that an employer incurs withdrawal liability when it sells covered operations. At all times material, Aviall has continued to operate the former Cooper division and has continued to make contributions to the Plan in accordance with the collective bargaining agreement.
In May 1984, Cooper closed another division, Crescent Tool. Contributions were being made to the Plan on behalf of Crescent employees; therefore, the closing of this division constituted a withdrawal within the meaning of 29 U.S.C. § 1383(a)(2).
Thereafter, the Plan notified Cooper pursuant to 29 U.S.C. § 1399 that it owed plaintiffs $624,343 in withdrawal payments, to be paid in three installments. The first payment of $262,188 was due by September 25, 1984.
When Cooper failed to make the initial payment, plaintiffs filed suit demanding judgment against Cooper in the amount of the first installment, plus interest from the September 25 payment date. In its answer, Cooper claimed that the requested payment was unlawful under section 1384 because it sought to impose liability for the division sold to Aviall over two years prior to Cooper's complete withdrawal from the Plan. Cooper also counterclaimed for an injunction against the enforcement of plaintiffs' withdrawal liability demand.
On June 25, 1985, the Court entered an order requiring Cooper to pay the overdue first installment of withdrawal liability to the Fund, with interest, pending resolution of its counterclaim. The issue now ready for decision is the meaning of section 1384 raised by Cooper.

II. Discussion

A. Section 1384

Section 1384 provides an exception to the rule that an employer incurs withdrawal liability when it sells operations covered by MPPAA funding requirements. No withdrawal occurs "as a result of a bona-fide, arm's-length sale of assets to an unrelated party" if (1) the purchaser assumes "an obligation to contribute to the plan ... for substantially the same number of contribution *338 base units"[1] as the seller contributed for the operations; (2) the purchaser posts the required bond or places the required amount in escrow for five plan years; and (3) the seller agrees to remain secondarily liable in the event of the purchaser's subsequent withdrawal. Section 1384(a)(1)(A), (B), (C).
In compliance with section 1384, Aviall agreed to contribute to the Plan with respect to the Cooper Airmotive operations for substantially the same number of contribution base units for which Cooper had an obligation to contribute to the Plan. Effective December 17, 1981, Aviall posted a two-year renewable bond for $220,000, the appropriate statutory amount, payable to the Plan in the event that Aviall withdrew from or failed to make contributions to the Plan. In addition, Cooper agreed to be secondarily liable if Aviall completely or partially withdrew during the first five plan years and failed to pay the resulting withdrawal liability. Defendant's Exhibits A, B.
A separate letter agreement dated December 18, 1981, contained provisions by which Aviall agreed to secure its remaining three-year obligation under section 1384(a)(1)(B). The Pension Benefit Guaranty Corporation ("PBGC")[2] rendered a favorable opinion on the propriety of the bonding arrangement. Defendant's Exhibits G, H.
While it appears to the Court that Cooper complied with the various requirements of section 1384 in the Cooper Airmotive sale, plaintiffs contend that section 1384 is operative only when a complete or partial withdrawal has occurred under 29 U.S.C. § 1383 or § 1385. Since no withdrawal occurred in 1981, plaintiffs assert that section 1384 did not apply to Cooper's sale of its Cooper Airmotive division.
Defendant argues that its compliance with section 1384 in the 1981 Cooper Airmotive transaction shields it from withdrawal liability for that division when it subsequently withdrew from the Plan in 1984. The Court agrees, finding defendant's interpretation of section 1384 the only plausible one.
The express terms of section 1384 provide the starting point for interpreting that statute. Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The three central provisions of section 1384(a)(1), here applicable, indicate a primary concern with maintaining plan funding after the sale of a covered operation to another entity not a party to the collective bargaining agreement. Supra at 337-338. The Court finds nothing in the statute to support plaintiffs' contention that section 1384 is operative only when a contemporaneous complete or partial withdrawal occurs.
Indeed, plaintiffs' interpretation would defeat the purpose of section 1384 by assigning to Cooper a liability assumed properly by Aviall. See Plaintiffs' Additional Memorandum at 6. Because Aviall continues to make contributions on behalf of employees in the covered operations, plaintiffs' interpretation would permit a double recovery, in contravention of the statutory scheme. Plaintiffs' theory essentially reads section 1384 out of the statute by permanently saddling a seller with potential liability. Moreover, unless an employer was considering a sale of assets that would by itself constitute a withdrawal within the meaning of 29 U.S.C. § 1383 or § 1385, the position advocated by plaintiffs would eliminate any incentive for the seller to find a purchaser willing to continue contributing to the pension plan.
The MPPAA was enacted to protect multiemployer pension funds and the PBGC from employers withdrawing and leaving the funds without the financial resources *339 to provide benefits to covered employees. H.R.Rep. No. 869(I), 96th Cong., 2d Sess. 65, 67, 73 (1980); H.R.Rep. No. 869(II), 96th Cong., 2d Sess. 4 (1980), reprinted in 1980 U.S.Code Cong. & Ad. News 2918, 2933, 2935, 2941, 2995; T.I.M. E.  DC, Inc. v. Management-Labor Welfare & Pension Funds, 756 F.2d 939, 943-44 (2d Cir.1985). Commensurate with the well-stated purpose of the MPPAA, section 1384 is designed to ensure substantial protection of the pension plan where an employer structures a normal business transaction  a sale of assets.
Congress intended withdrawal liability to be imposed as necessary to compensate plans for the cessation of contributions  not as a penalty in addition to contributions. E.g., 1980 U.S.Code Cong. & Ad. News at 2922-23, 2928-29, 3004; Pieck v. Pension Benefit Guaranty Corp., 724 F.2d 1247 (7th Cir.1983); see generally Gulf Oil Corp. v. Copp Paring Co., 419 U.S. 186, 197, 95 S.Ct. 392, 399, 42 L.Ed.2d 378 (1974) (congressional intent is to be derived from the statutory language read in light of its purposes and legislative history). The employer should not be subject to withdrawal liability with respect to operations sold to a purchaser willing to continue contributing to the plan.
This reading of section 1384 receives further support from PBGC Opinion Letter No. 83-10 (May 12, 1983). In that letter, the PBGC concluded that where a sale of assets complies with section 1384 but there is no withdrawal at the time, the seller should receive a credit in any subsequent withdrawal liability calculations:
[I]f the sale under section 1384 is with respect to only a portion of the operations for which the employer has an obligation to contribute, the question is raised whether future liability calculations should take into account all the operations, including those sold under section 4204 [29 U.S.C. § 1384], or whether there should be a credit for the sale in light of the purchaser's assumption of the contribution history for the sold operations.
After careful consideration, it is our view that credit should be given the seller for a section 4204 [29 U.S.C. § 1384] sale of a portion of its covered operations.
The letter went on to note that absent such a credit the purpose of section 1384 would not be met since "[t]hat purpose is to avoid primary liability with respect to a sale of assets, if the terms of section 4204 [29 U.S.C. § 1384] are met."[3] PBGC Opinion Letter 83-10. See generally Connolly v. PBGC, 581 F.2d 729, 730 (9th Cir.), cert. denied, 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1978) (interpretive letter by PBGC's General Counsel held to be "entitled to great deference in the construction and application of ERISA"); accord Belland v. PBGC, 726 F.2d 839, 843 (D.C.Cir. 1984) (quoting Connolly, supra).

B. The "Substantially the Same Number" Test

Plaintiffs also contend that section 1384 is inapplicable because the sale of Cooper Airmotive does not meet a requirement of section 1384(a)(1)(A) that after the sale, the purchaser has an "obligation to contribute to the plan with respect to the operations for substantially the same number of contribution base units for which the seller had an obligation to contribute to the plan." According to plaintiffs, in order for the sale to satisfy this provision, the purchaser must have contributed, during the first twelve months following the sale, at least 90 percent of the contribution base units contributed by the seller during the twelve months before the sale. It is undisputed that in the twelve months following its acquisition of Cooper Airmotive, the base units for which Aviall was obligated to contribute constituted 79 percent of the contribution base units for which Cooper had been obligated in the year before the sale.
*340 Plaintiffs rely principally upon the arbitrator's opinion in Kroger Co. and Southern California Food Worker's Pension Fund, 6 E.B.C. 1346 (Jan. 30, 1985) ("Kroger"). In Kroger, the arbitrator compared the seller's contributions for the last presale plan year with the purchaser's contributions in the first full post-sale plan year. Id. at 1363-64. The arbitrator then decided squarely that "... 79 percent is simply not, as a literal matter, `substantially the same number' as 100 percent." Id. at 1364.
Upon examination of the facts in Kroger, the Court finds it distinguishable from the present action. In Kroger, the company sold and closed a group of grocery stores. The majority of sales, encompassing 79 percent of Kroger's total contribution obligations, complied in all respects with section 1384.
As to five stores, however, the purchasers failed to make any contributions to the plan despite agreements to do so. Kroger, 6 E.B.C. at 1359. The arbitrator found that those purchasers had not assumed Kroger's obligation to contribute to the plan. Id. at 1361. The arbitrator then applied the "substantially the same number" test to determine how much of its total contribution base units Kroger had transferred to section 1384 purchasers  not to "how much of that base was thereafter maintained by the purchasers." Id. at 1363. The arbitrator concluded that Kroger was liable for the five stores for which the purchasers had not made a single contribution. Id. at 1364-65.
Here, Cooper transferred its entire Cooper Airmotive obligation to Aviall. Unlike the issue in Kroger, the question here is whether Aviall has contributed substantially the same number of contribution base units as did Cooper  not whether Cooper transferred substantially the same number of Cooper Airmotive base units to Aviall.
While recognizing the folly of attempting to endow the nebulous phraseology of section 1384(a)(1)(A) with some precise meaning, the Court finds persuasive the arbitrator's reasoning in The Terson Company, 4 E.B.C. 1009 (Feb. 3, 1983) ("Terson"). The arbitrator determined that section 1384 provisions should be interpreted in light of the partial withdrawal section, 29 U.S.C. § 1385, and that a 70 percent contribution decline must occur for section 1384 to become inoperative.
In Terson the arbitrator ruled that section 1384 had been complied with where the purchaser had not reduced contributions to the point where a partial withdrawal would have occurred.
The test must be the existence of contributions, not the party making them. As contributions are being made by [the purchaser] for former ... employees [of the seller] of sufficient magnitude to prevent the triggering of a [29 U.S.C. § 1385] partial withdrawal liability, it is senseless to find that reductions insufficient to produce a partial withdrawal for [the purchaser] produce a complete withdrawal for [the seller] in the absence of a showing of harm to the Funds.
Terson, 4 E.B.C. at 1013. In other words, the arbitrator found it at odds with the purpose and spirit of the MPPAA to find that contribution reductions insufficient to produce a partial withdrawal for the successor employer could be considered a violation of section 1384(a)(1)(A), absent a showing of harm to the pension fund. But see Kroger, 6 E.B.C. at 1364 n. 21.
In addition, the Terson arbitrator observed that "... pension plans receive and disburse income in a stream." Terson, 4 E.B.C. at 1014. Accordingly, he suggested that a snapshot view of the history of the section 1384 purchaser's contribution to the plan was inappropriate. Relying again on an analogy to partial withdrawals, the arbitrator noted that 29 U.S.C. § 1385 requires a three-year period in assessing the amount payable to a pension fund. Id. Plaintiffs here used a twelve-month period as a reference, an amount of time which may be insufficient to establish a representative contribution history given the cyclical nature of most businesses.

III. Conclusion

The Court finds that defendant is protected from withdrawal liability for its *341 Cooper Airmotive division, pursuant to section 1384. Further, in view of plaintiffs' failure to segregate the proper assessment from the improper assessment in its notice of liability, 29 U.S.C. § 1399(b)(1), the notice is declared invalid in its present form without prejudice to plaintiffs' right to issue another notice demanding the proper amount of liability. Last, the first installment of withdrawal liability which defendant was directed to pay pursuant to the Court's order of June 25, 1985, shall be applied as a credit against the total amount of withdrawal liability, properly calculated. If any amount remains after liability has been satisfied, plaintiffs shall refund it to defendant.
NOTES
[1] The term "contribution base unit" is defined at 29 U.S.C. § 1301(a)(11).
[2] The PBGC is a federal government corporation and is the federal agency responsible for enforcement of Title IV of the Employee Retirement Income Security Act of 1974, including the MPPAA provisions in this case, 29 U.S.C. §§ 1301-1461. 29 U.S.C. § 1302(a).
[3] Note, however, if a principal purpose of the transaction is to evade or avoid withdrawal liability, no credit would apply. 29 U.S.C. § 1392(c). No such contention has been raised here.