Kristja J. FALVO, as parent and next friend of her minor children, Elizabeth Pletan, Philip Pletan, and Erica Pletan; and on behalf of others similarly situated, Plaintiff–Appellant,

v.

OWASSO INDEPENDENT SCHOOL DISTRICT NO. I-011, a/k/a/ Owasso Public Schools; Dale Johnson, individually and in his official capacity as Superintendent; Lynn Johnson, individually and in her official capacity as Assistant Superintendent; Rick Thomas, individually and in his official capacity as Principal; John Doe, sued as: Does 1 through 50, Defendants–Appellees.

No. 99–5130.

United States Court of Appeals, Tenth Circuit.

Oct. 4, 2000.

Before SEYMOUR, Chief Judge, TACHA, BALDOCK, BRORBY, EBEL, KELLY, HENRY, BRISCOE, LUCERO and MURPHY, Circuit Judges.

## ORDER

This matter is before the court on appellees' petition for rehearing with suggestion for en banc review to which appellant has responded. Upon the original panel members' consideration of the rehearing petition, the request was denied.

The suggestion for rehearing en banc and appellant's response were transmitted to all of the judges of the court who are in regular active service. *See* Fed. R. App. P. 35. A poll was requested. A majority of the active judges voted, however, to deny the request for en banc review. Judges Tacha, Baldock, Brorby, and Kelly voted to grant the en banc suggestion.

Although the request for rehearing is denied, the panel has determined, on its

own motion, that the original decision filed on July 31, 2000 [220 F.3d 1200], shall be amended. Consequently, the original opinion is withdrawn. The amended opinion shall be filed forthwith.

The panel has taken appellant's requests for attorney's fees and costs under advisement.

KELLY, Circuit Judge, dissenting, with whom TACHA, BALDOCK and BRORBY, Circuit Judges, join.

I respectfully dissent from the court's denial of rehearing en banc. The court has determined that the Family Education Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, is violated by a grading practice that allows students to grade one another's papers because the grades constitute "education records," *id.* § 1232g(a)(4)(A), that cannot be released to other students. Defining "education records" to include "grades which students record on one another's homework and test papers and then report to the teacher," Amended Ct. Op. at 1215, is a vast expansion of the actual words of the statute, and unsupported by the legislative history.

The grades that students record on one another's papers simply do not meet the second element of the definition of "education records," any more than the papers themselves could. 20 U.S.C. § 1232g(a)(4)(A)(ii). Neither the papers nor the grades placed upon them are "records, files, documents or other materials which . . . are maintained by an educational agency or institution or by a person acting for such agency or institution." *Id.* The papers (or at least the responses) belong to the student. The teacher may act for the educational agency or institution in recording the grade in a grade book

(or on a spreadsheet), but it is one step removed to say that the teacher's potential receipt of that grade makes every uncompensated student that participates in the grading process "a person acting for such agency or institution."

Were there any doubt, the statute specifically provides that "education records" do not include "records of instructional . . . personnel . . . which are in the sole possession of the maker thereof and which are not accessible or revealed to any person except a substitute." *Id.* § 1232g(a)(4)(B)(i). No one suggests that the teacher's grade book is accessible or has been revealed to any person except a substitute, or released to any person or group not within the exceptions created by 20 U.S.C. § 1232(b)(1). If the teacher's grade book normally does not constitute an "education record," how can it be that individual grades on papers can be "education records?"

According to the court, if grades in a grade book revealed to someone other than a substitute are "education records," the grades prior to entry must also be protected because they are disseminated to other students. *See* Amended Ct. Op. at 1216.[1] The statute makes no mention of grades prior to entry being "education records," and had Congress intended such an important change in this sensitive area, surely Congress would have included express language to that effect. Relying "purely on the language of the statute itself," *id.* at 1216, however, the court attributes its conclusion solely to Congressional intent. There is an obvious difference, however, between grades entered in a grade book (a collective record of the teacher) and the individual grades (on student papers) that are not recorded in a grade book. Surely Congress could have

---

1. The critical part of the court's decision:

    If Congress intended FERPA to preclude a teacher from revealing to one student the grades of another when written in a grade book, it would be incongruous to permit a teacher to disclose or allow the dissemina-

    tion of those grades to other students immediately before recording them in the grade book or noting them in some similar way which serves the same purposes as a grade book record.

    Amended Ct. Op. at 1216.

intended to protect one in limited circumstances, and not the other. Likewise, there is a difference between a final grade placed on a transcript and the individual scores that determine the final grade.

A careful reading of FERPA and its legislative history requires a much narrower definition of "education records." The school district correctly argues that extending the definition of "education records" to grades placed upon papers necessarily invokes the right to a hearing to challenge the grade, 20 U.S.C. § 1232g(a)(2), and the need for an educational institution to maintain an access record indicating those who have obtained or requested access to that grade, *id.* § 1232g(b)(4)(A). Given the thousands of grades a student might receive over time, this seems impossible, if not implausible.

Congress did not intend a right to a hearing on each and every grade received. In responding to concerns regarding § 1232g(a)(2), the Joint Statement in Explanation of Buckley/Pell Amendment drew a critical distinction between an institutional record in which a grade was recorded (the accuracy of which can be challenged) and the graded material itself (the accuracy of which cannot be challenged). The Joint Statement concluded that "education records" referred only to the former. 120 Cong. Rec. 39,862 (1974).[2] While grade books may qualify as institutional records, grades on papers certainly do not.

Practical difficulties with the court's decision abound because care must be taken to insure that no student learns the grade of another. Thus, a school district should be wary of academic awards based upon grades, for the underlying grades may be

revealed. Likewise, a determination that a student athlete is academically ineligible carries the same risk. A routine function-passing out a stack of graded papers alphabetized by name—will now require teacher involvement and the students cannot do it themselves for fear that one student might see another's grade, intentionally or unintentionally. This cannot be what Congress meant when it sought to protect a student's personal information and permanent academic record from unwarranted disclosure. Our teachers are overworked and underpaid now. What will happen to them when they can be sued by every irate parent or student claiming that someone saw a grade or that they were denied a fair hearing to challenge a test grade? For these reasons, I respectfully dissent from the denial of rehearing en banc.

---

**2.** When interpreting a statute, a court should look to its plain language, resorting to legislative history in an attempt to discern congressional intent only when the language of the statute is unclear. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). Contrary to the court's conclusion, the definition of "education records" to encompass

grades placed on papers is far from clear on the face of the statute. The court reaches its conclusion only after *assuming* that if Congress intended to protect grade books, it also intended to protect graded papers and tests. Thus, whether "education records" refers to graded papers is unclear from the face of the statute. In such cases, consideration of legislative history is wholly appropriate.